IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KYLE ALLEN SALYER, | ) CIVIL ACTION NO. 3:16-57 |
| | ) |
| Plaintiff, | ) JUDGE KIM R. GIBSON |
| | ) |
| v. | ) |
| | ) |
| HOLLIDAYSBURG AREA SCHOOL | ) |
| DISTRICT, WAYNE BUSH, MARK R. | ) |
| HARRINGTON, DAWN ECKENRODE | ) |
| and MAUREEN D. LETCHER, D. ED. | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

### I.    Introduction

Presently before the Court is the Motion for Summary Judgment filed by

Defendants (ECF No. 36). The Motion has been fully briefed (*see* ECF Nos. 37, 39, 43) and is

ripe for disposition. For the reasons that follow, the Motion will be **GRANTED.**

### II.    Jurisdiction

The Court has jurisdiction over the federal constitutional claims pursuant to 28

U.S.C. § 1331, 1343, and 42 U.S.C. § 1983. The Court has supplemental jurisdiction over the

state law claims pursuant to 28 U.S.C. § 1367. Venue is proper under 28 U.S.C. § 1391(b)

because a substantial portion of the events giving rise to the claims occurred in the Western

District of Pennsylvania.

## III.  Background

### A.  Factual History[1]

Plaintiff Kyle Salyer ("Salyer") attended Hollidaysburg Area High School ("the High School") as an eleventh grader during the 2014-2015 school year.[2] Salyer is diagnosed with autism.[3] The High School does not train its staff about how to interact with students on the autism spectrum.[4]

Salyer had a history of making violent threats. Earlier in the 2014-2015 academic year, Salyer received a three-day suspension after he threatened to bring a knife on a school trip and told another student that when he turned eighteen he was going to line his coat with knives and kill anyone he wanted.[5] The letter informing Salyer of his three-day suspension informed him that his behavior "is causing students around him to be afraid of him."[6]

---

[1] The facts contained in this section are derived from a combination of Defendants' Concise Statement of Material Facts (ECF No. 38), Plaintiff's Response to Concise Statement of Material Facts (ECF No. 41), and Defendants' Response to the Concise Statement of Material Facts Filed by Plaintiff (ECF No. 45), and are undisputed unless otherwise noted.

[2] ECF No. 38, at ¶ 2; ECF No. 41 at ¶ 2.

[3] ECF No. 41, at ¶ 61; ECF No. 45 at ¶ 61.

[4] ECF No. 41 at ¶ 66. Defendants deny this allegation as stated. To support their denial, Defendants cite the testimony of Defendant Officer Wayne Bush and Hollidaysburg Borough Police Department Sergeant Rodney Estep. (ECF No. 45 at ¶ 66.) But neither Officer Bush nor Officer Estep testified that they received any special training from the High School on dealing with students with autism. (*See* Deposition of Wayne Bush, ECF No. 46-5 at ¶¶ 19-23; Deposition of Rodney Estep, ECF No. 46-6 at ¶¶ 4-8.) Because Defendants failed to properly support their factual assertion as required under Rule 56(c), the Court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(E). Therefore, the Court deems this allegation as admitted for purposes of Defendants' Motion for Summary Judgment.

[5] ECF No. 38, at ¶¶ 7-11; ECF No. 41 at ¶¶ 7-11.

[6] ECF No. 38, at ¶ 12; ECF No. 41 at ¶12.

On May 19, 2015, Salyer was suspected of planning a violent plot against D.S., a fellow student at the High School.[7] D.S. and his family informed Dawn Eckenrode ("Eckenrode"), Dean of Students, and Mark Harrington ("Harrington"), Assistant Principle, about Salyer's threat during an unscheduled meeting that took place before the start of the school day.[8] During the meeting, D.S. told Eckenrode and Harrington that Salyer and B.L., D.S.'s ex-girlfriend, planned to attack D.S. with a knife later that day.[9] To substantiate the allegation, D.S. showed Eckenrode and Harrington text messages between him and B.L. regarding Salyer's involvement in the forthcoming knife attack.[10] D.S. also told Eckenrode and Harrington that the previous day another student, E.Z., overheard Salyer and B.L. planning the knife attack.[11]

After meeting with D.S. and his family, Eckenrode and Harrington began to investigate the alleged plot. At approximately 7:45 a.m., they called Salyer's teacher, who instructed Salyer to report to the Dean of Student's Office.[12] Once Salyer arrived, he waited in the Attendance Secretary's Office, which adjoins the Dean of Students' Office.[13]

Around 8:00 a.m., Eckenrode and Harrington summoned Salyer into the Dean of Students' Office and informed him about the accusations.[14] Salyer denied that he had planned to attack D.S. with a knife, and stated that he wanted to punch and kick his

---

[7] ECF No. 38, at ¶ 1; ECF No. 41 at ¶ 1.
[8] ECF No. 38, at ¶ 3; ECF No. 41 at ¶ 3.
[9] ECF No. 38, at ¶ 4; ECF No. 41 at ¶ 4.
[10] ECF No. 38, at ¶ 5; ECF No. 41 at ¶ 5.
[11] ECF No. 38, at ¶ 6; ECF No. 41 at ¶ 6.
[12] ECF No. 38, at ¶ 13; ECF No. 41 at ¶ 13.
[13] ECF No. 38, at ¶ 13; ECF No. 41 at ¶ 13.
[14] ECF No. 38, at ¶ 14; ECF No. 41 at ¶ 14.

accuser.[15] Salyer testified that he voluntarily emptied his pockets to prove that he did not have a knife and that Eckenrode and Harrington told him they "were on his side."[16] Eckenrode and Harrington returned Salyer to the Attendance Secretary's Office and continued their investigation.[17]

Eckenrode and Harrington interviewed E.Z., who confirmed that he overheard Salyer and B.L. planning a knife attack on D.S.[18] E.Z. also provided a written statement memorializing what he told Eckenrode and Harrington.[19]

The interview with E.Z. increased Eckenrode and Harrington's concern, because E.Z. was a good student and they believed him to be credible.[20] Eckenrode and Harrington also interviewed another student, J.H., who overheard the conversation from the previous day between Salyer and B.L.. [21] But J.H. was "evasive" when questioned about the

---

[15] ECF No. 38, at ¶ 15; ECF No. 41 at ¶ 15.

[16] ECF No. 41 at ¶ 64. Defendants deny that Salyer emptied his pockets during this first encounter. (ECF No. 45 at ¶ 64.)

[17] ECF No. 38, at ¶ 16; ECF No. 41 at ¶ 16.

[18] ECF No. 38, at ¶¶ 17-18; ECF No. 41 at ¶¶ 17-18.

[19] ECF No. 38, at ¶ 18; ECF No. 41 at ¶ 18.

[20] ECF No. 38, at ¶ 19. Salyer admits this fact "only to the extent that this paragraph summarizes testimony and alleged opinions of Defendant Eckenrode." (ECF No. 41 at ¶ 19.) But Salyer does not reference the record or provide any citation for his apparent disagreement with the content of Eckenrode's testimony. (*See id.*) Because Salyer failed to cite to the record as required by Fed. R. Civ. P. 56(c)(1), the Court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(E). Therefore, the Court deems this allegation as admitted for purposes of Defendants' Motion for Summary Judgment.

[21] ECF No. 38, at ¶ 20. Salyer admits this fact "only to the extent that this paragraph summarizes testimony and alleged opinions of Defendant Harrington." (ECF No. 41 at ¶ 20.) But Salyer does not reference the record or provide any citation for his apparent disagreement with the content of Harrington's testimony. (*See id.*) Because Salyer failed to cite to the record to substantiate his conditional acceptance as required by Fed. R. Civ. P. 56(c)(1), the Court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(E). Therefore, the Court deems this allegation as admitted for purposes of Defendants' Motion for Summary Judgment.

allegations against Salyer, which caused Eckenrode and Harrington to conclude that J.H. had not told them everything that he knew and further heightened their concern.[22]

Due to their increased concern, Eckenrode and Harrington instructed that D.S. be moved to a "safe area."[23] Eckenrode also called the school where B.L. attended morning classes to "warn" officials there about the possible knife plot.[24] A search of B.L. was performed at the school where she attended morning classes.[25]

Prior to 9:00 a.m., Eckenrode and Harrington called Salyer back into the Dean of Students' Office.[26] School Resource Officer Wayne Bush ("Officer Bush") was also present.[27] Officer Bush never received special training for dealing with students on the autism spectrum and did not know that Salyer was autistic.[28]

Officer Bush and Harrington escorted Salyer to his locker and collected his backpack.[29] They searched Salyer's locker, but did not find a knife.[30] Next, Officer Bush and Harrington escorted Salyer to his first period class to retrieve the belongings Salyer had left

---

[22] *Id.*

[23] ECF No. 38, at ¶ 21. Salyer admits this fact "only to the extent that this paragraph summarizes testimony and alleged opinions of Defendant Eckenrode." (ECF No. 41 at ¶ 21.) But Salyer does not reference the record or provide any citation for his apparent disagreement with the content of Eckenrode's testimony. (*See id.*) Because Salyer failed to cite to the record to substantiate his conditional acceptance as required by Fed. R. Civ. P. 56(c)(1), the Court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(E). Therefore, the Court deems this allegation as admitted for purposes of Defendants' Motion for Summary Judgment.

[24] ECF No. 38, at ¶ 22; ECF No. 41 at ¶ 22.

[25] ECF No. 38, at ¶ 22; ECF No. 41 at ¶ 22.

[26] ECF No. 38, at ¶ 23; ECF No. 41 at ¶ 23.

[27] ECF No. 38, at ¶ 23; ECF No. 41 at ¶ 23.

[28] ECF No. 41, at ¶¶ 67-68; ECF No. 45 at ¶¶ 67-68.

[29] ECF No. 38, at ¶ 24; ECF No. 41 at ¶ 24.

[30] ECF No. 38, at ¶ 24; ECF No. 41 at ¶ 24.

when first summoned to the Dean of Students' Office. [31] Salyer's belongings were retrieved.[32]

The three returned to the Dean of Students' Office.[33] Officer Bush searched Salyer's notebook, binder, and backpack, but did not locate a knife.[34]

Officer Bush and Harrington informed Salyer that they needed to conduct a search to determine whether he possessed a knife.[35] Salyer complied with Officer Bush's order to empty his pockets.[36] Officer Bush next asked Salyer to lift up his shirt; the parties disagree about whether Salyer complied.[37]

At this point, Officer Bush and Harrington "did not believe [Salyer] was showing them everything" and determined that they needed to search Salyer.[38] They informed Salyer that were going to search him.[39] Salyer replied that he did not want to be searched.[40]

---

[31] ECF No. 38, at ¶ 25; ECF No. 41 at ¶ 25.

[32] The parties dispute how Salyer's belongings were collected. Defendants stated that Harrington accompanied Salyer into the classroom as he retrieved his belongings. (*See* ECF No. 38 at ¶ 25.) Salyer, on the other hand, testified that he entered the classroom alone and that Harrington and Officer Bush waited for him outside the classroom. (ECF No. 41 at ¶ 25.)

[33] ECF No. 38, at ¶ 26; ECF No. 41 at ¶ 26.

[34] ECF No. 38, at ¶ 26; ECF No. 41 at ¶ 26.

[35] ECF No. 38, at ¶ 27; ECF No. 41 at ¶ 27.

[36] ECF No. 38, at ¶ 29; ECF No. 41 at ¶ 29.

[37] ECF No. 38, at ¶ 30; ECF No. 41 at ¶ 30. Officer Bush testified that Salyer was "hesitant or evasive" and did not lift his shirt high enough for Officer Bush to observe his waistline. (ECF No. 38-6 at 23:1-4.) Salyer testified that he complied with Officer Bush's order and lifted up his shirt to reveal his waistline. (ECF No. 38-3 at 59: 13-17.)

[38] ECF No. 38, at ¶ 31; ECF No. 41 at ¶ 31.

[39] ECF No. 38, at ¶ 31; ECF No. 41 at ¶ 31.

[40] ECF No. 38, at ¶ 32; ECF No. 41 at ¶ 32.

Officer Bush proceeded to "tap" Salyer's back pocket "to see if anything was there."[41] Salyer "slapped" Officer Bush's hand away.[42] Salyer repeated that he did not want to be searched and shouted expletives at Officer Bush, Harrington, and Eckenrode.[43]

Salyer then gathered his things and attempted to leave the Dean of Students' Office by "shov[ing] his way past Officer Bush."[44] But Officer Bush blocked the door and informed Salyer that he needed to be searched and was not permitted to leave.[45] Salyer, who is "husky and very strong, like a wrestler"[46] attempted to "push past" Officer Bush and exit the Dean of Students' Office into the High School's main hallway.[47] Officer Bush grabbed Salyer to restrain him.[48] Both Bush and Salyer fell to the ground.[49] On the ground, Salyer screamed, "continued to resist" Officer Bush, and kicked Officer Bush in the head.[50]

Eckenrode called the police.[51] Salyer got to his feet and remained standing until the police arrived.[52] When two policemen from the Hollidaysburg Borough Police Department (the "Commonwealth Officers") arrived, Salyer was standing with his back to the wall and displayed a "hostile and aggressive" demeanor.[53] One of the Commonwealth Officers informed Salyer that he would be searched for the knife in question.[54] The Commonwealth

---

[41] ECF No. 38, at ¶ 33; ECF No. 41 at ¶ 33.
[42] ECF No. 38, at ¶ 34; ECF No. 41 at ¶ 34.
[43] ECF No. 38, at ¶ 35; ECF No. 41 at ¶ 35.
[44] ECF No. 38, at ¶ 36; ECF No. 41 at ¶ 36.
[45] ECF No. 38, at ¶ 37; ECF No. 41 at ¶ 37.
[46] ECF No. 38, at ¶ 39; ECF No. 41 at ¶ 39.
[47] ECF No. 38, at ¶ 38; ECF No. 41 at ¶ 38.
[48] ECF No. 38, at ¶ 39; ECF No. 41 at ¶ 39.
[49] ECF No. 38, at ¶ 39; ECF No. 41 at ¶ 39.
[50] ECF No. 38, at ¶ 40; ECF No. 41 at ¶ 40.
[51] ECF No. 38, at ¶ 41; ECF No. 41 at ¶ 41.
[52] ECF No. 38, at ¶ 42; ECF No. 41 at ¶ 42.
[53] ECF No. 38, at ¶¶ 43-44; ECF No. 41 at ¶¶ 43-44.
[54] ECF No. 38, at ¶ 445; ECF No. 41 at ¶ 45.

-7-

Officer spoke to Salyer in a calm tone, in an attempt to soothe Salyer.[55] But Salyer's demeanor did not change and he remained uncooperative.[56]

One of the Commonwealth Officers ordered Salyer to life up his shirt, but Salyer refused to comply.[57] The Commonwealth Officer told Plaintiff that he would "be forced to submit to a search" if Salyer did not lift up his shirt.[58] Salyer replied, "You're not fucking touching me."[59]

The Commonwealth Officers grabbed Salyer by his arms.[60] Salyer resisted.[61] The Commonwealth Officers forced Salyer to the ground.[62] Even after he was forced to the ground, Salyer continued fighting the officers.[63]

The Commonwealth Officers searched Salyer.[64] After they handcuffed him, they placed him in a chair.[65] Officer Bush wiped Salyer's nose and got him a drink.[66] Salyer declined medical attention.[67]

Salyer's mother arrived and was told that Salyer would face criminal charges for assaulting Officer Bush.[68] Salyer was released to his mother because he was a juvenile at the

---

[55] ECF No. 38, at ¶ 42; ECF No. 41 at ¶ 42
[56] ECF No. 38, at ¶ 46; ECF No. 41 at ¶ 46.
[57] ECF No. 38, at ¶ 47; ECF No. 41 at ¶ 47.
[58] ECF No. 38, at ¶ 48; ECF No. 41 at ¶ 48.
[59] ECF No. 38, at ¶ 48; ECF No. 41 at ¶ 48.
[60] ECF No. 38, at ¶ 49; ECF No. 41 at ¶ 49.
[61] ECF No. 38, at ¶ 50; ECF No. 41 at ¶ 50.
[62] ECF No. 38, at ¶ 50; ECF No. 41 at ¶ 50.
[63] ECF No. 38, at ¶ 50; ECF No. 41 at ¶ 50.
[64] ECF No. 38, at ¶ 51; ECF No. 41 at ¶ 51.
[65] ECF No. 38, at ¶ 52; ECF No. 41 at ¶ 52.
[66] ECF No. 38, at ¶ 53; ECF No. 41 at ¶ 53.
[67] ECF No. 38, at ¶ 53; ECF No. 41 at ¶ 53.
[68] ECF No. 38, at ¶ 54; ECF No. 41 at ¶ 54.

time. [69] Later that day, UPMC Altoona Hospital admitted Salyer for psychiatric observation.[70]

Before May 19, 2015, Salyer's mother had previously participated in meetings with some of Salyer's teachers and informed them that Salyer is sensitive to, and uncomfortable with, physical touch.[71] Additionally, in October 2013, Ms. Salyer sent the High School a letter requesting that the High School contact her in the event of "any disciplinary actions or meetings" concerning her son.[72]

## B.    Procedural History

Salyer filed a three-count Complaint before this Court. (ECF No. 1.) In Count I, Salyer asserted a claim for violation of his Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. (*Id.* at ¶¶ 39-46.) In Count II, Salyer asserted state tort claims for negligence, gross negligence, and recklessness. (*Id.* at ¶¶ 42-44.) In Count III, Salyer asserted state tort claims for assault, battery, and false imprisonment. (*Id.* at ¶¶ 45-46.) Salyer brought each claim against all Defendants.

---

[69] ECF No. 38, at ¶ 55; ECF No. 41 at ¶ 55.

[70] ECF No. 38, at ¶ 56; ECF No. 41 at ¶ 56.

[71] ECF No. 41 at ¶ 62. Defendants deny that Ms. Salyer informed any employees of the High School that Salyer was sensitive to touch. But to support their denial, Defendants cite to the testimony of Maureen Letcher, the Principal of the High School. In the portion of Ms. Letcher's testimony that Defendants cite, Ms. Letcher states that *she* did not have any knowledge of Salyer's sensitivity to touch. (Deposition of Maureen Letcher, ECF No. 46-1 at 10.) But Ms. Letcher does not deny that Ms. Salyer told a teacher that her son did not like to be touched. (*See id.*) Therefore, Defendants' citation to Ms. Letcher's testimony fails to create a genuine dispute regarding whether Ms. Salyer told a teacher that Salyer had a sensitivity to touch, and the Court accepts as admitted Ms. Salyer's allegation that she informed at least one teacher of Salyer's touch sensitivity for purposes of Defendants' Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(E).

[72] ECF No. 41 at ¶ 63; ECF No. 14 at ¶ 63.

-9-

Defendants moved to dismiss Salyer's Complaint in its entirety. (ECF No. 11.) The Court, via Memorandum Opinion and Order, granted Defendants' Motion to Dismiss Salyer's Fourteenth Amendment claims, all state tort claims asserted against Hollidaysburg Area School District (the "School District"), and the negligence, gross negligence, and recklessness claims brought against Harrington, Eckenrode, Maureen D. Letcher, and Officer Bush (the "Individual Defendants"). (*See* "Memorandum Opinion," Sep. 26, 2016, ECF No. 22.) The Court denied Defendants' Motion to Dismiss with respect to the Fourth Amendment claim against all Defendants and the state tort claims for assault, battery, and false imprisonment against the Individual Defendants. (*Id.*)

Defendants now move for summary judgment on all remaining claims. (ECF No. 36.)

## IV. Standard of Review

"Summary judgment is appropriate only where . . . there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh,* 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.,* 500 F.3d 375, 380 n.6 (3d Cir. 2007)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup,* 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson,* 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could

return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).

**V.    The Court Will Grant Defendants' Motion for Summary Judgment on Salyer's § 1983 Claims Because Salyer Failed to Provide Sufficient Evidence to Allow a Reasonable Jury to Conclude that Defendants Violated the Fourth Amendment**

### A.    Introduction to Section 1983 Claims

Salyor sues under 42 U.S.C. § 1983 which provides, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

*Id.* "Section 1983 does not create any rights, but provides a remedy for violations of those rights created by the Constitution or federal law." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 907 (3d Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)); *Puckett v. Miller*, No. CV 15-1019, 2018 WL 658926, at *6 (W.D. Pa. Feb. 1, 2018) (Fischer, J.) (quoting *Morse*, 132 F.3d at 907). Accordingly, "[a] plaintiff cannot prevail in an action brought under § 1983 without establishing an underlying violation of a federal constitutional or statutory right." *Ickes v. Borough of Bedford*, 807 F. Supp. 2d 306, 315 (W.D. Pa. 2011) (Gibson, J.) (citing *Blessing v. Freestone*, 520 U.S. 329, 340 (1997)).

"The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998)); *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (quoting *Nicini*, 212 F.3d at 806).

**B.    The Fourth Amendment in the Context of School Searches**

Salyer alleges that Defendants violated his Fourth Amendment right to be free from unreasonable searches and seizures. The Fourth Amendment provides that:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or

affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST., AMEND. IV.[73] The Fourth Amendment applies to searches of public school students conducted by school officials. *See New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985).

"[I]n the public school setting, Fourth Amendment claims are not evaluated using the usual probable cause standard." *Salyer v. Hollidaysburg Area Sch. Dist.*, No. CV 3:16-57, 2016 WL 5376218, at *3 (W.D. Pa. Sept. 26, 2016) (Gibson, J.). Rather, "the legality of a search of a student . . . depend[s] simply on the reasonableness, under all the circumstances, of the search." *T.L.O.*, 469 U.S. at 341; *see Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370 (2009).

Evaluating the reasonableness of a search involves two-steps. *T.L.O.*, 469 U.S. at 341. First, courts must determine whether the search "was justified at its inception." *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)). The Supreme Court has stated that, "[u]nder ordinary circumstances, a search of a student by a teacher or other school official will be 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *T.L.O.*, 469 U.S. at 341-42.

---

[73] The Fourth Amendment, on its face, only applies to the federal government. But the Supreme Court has held that, under the incorporation doctrine, the Fourteenth Amendment's Due Process Clause incorporates the Fourth Amendment against the states. *See, e.g., Terry v. Ohio*, 392 U.S. 1, 8 (1968) (citing *Mapp v. Ohio*, 367 U.S. 643 (1961)) (holding that the Fourth Amendment was "made applicable to the States by the Fourteenth."); *Cady v. Dombrowski*, 413 U.S. 433, 440 (1973) (reiterating that the Fourteenth Amendment incorporates the Fourth Amendment); *Ickes*, 807 F. Supp. 2d at 315 (citing *Cady*, 413 U.S. at 440).

Second, Courts must assess "whether the search as actually conducted 'was reasonably related in scope to the circumstances which justified the interference in the first place.'" *T.L.O.*, 469 U.S. 341 (quoting *Terry*, 392 U.S. at 20). The Supreme Court has announced that "a school search 'will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.'" *Safford*, 557 U.S. at 370 (quoting *T.L.O.*, 469 U.S. at 342).

Unlike in the criminal context, where officers need probable cause to conduct a search, a school search is constitutionally permissible if there is "a moderate chance of finding evidence of wrongdoing." *Safford*, 557 U.S. at 371.

## C. No Reasonable Jury Could Find that the Search of Salyer Was Unjustified at Its Inception

Defendants contend that no reasonable jury could conclude that the search of Salyer was not justified at its inception because the Individual Defendants had reasonable grounds for suspecting that Salyer possessed a knife. (ECF No. 37 at 8-10.) Defendants further assert that the search was reasonable in scope because, having failed to uncover a knife in Salyer's binder, backpack, and locker, the Individual Defendants reasonably suspected that the knife was on Salyer's person. (*Id.* at 11.) Lastly, Defendants aver that Salyer's autism diagnosis does not render the search of Salyer unreasonable because the Fourth Amendment does not require a special accommodation and, given the circumstances, it was reasonable to pat-down Salyer given that "Defendants' interest in determining whether [Salyer] was carrying a knife was paramount." (*Id.* at 13.)

-14-

In response, Salyer does not argue that a search was unjustified.[74] (*See* ECF No. 40 at 10.) Instead, he asserts that Defendants should have conducted a pat-down search of him *immediately* after receiving a report that he might be carrying a weapon.[75] (*Id.* at 9.) Salyer posits that the fact that the Individual Defendants did not immediately conduct a pat-down search establishes that the Individual Defendants "perceived no danger" and that, therefore, their eventual pat-down of Salyer unreasonable. (*Id.*) To support his theory, Salyer emphasizes that the Individual Defendants did not have an employee escort Salyer to the Dean of Student's Office when they summoned Salyer there around 7:45 a.m., but instead allowed Salyer to walk to the office unattended (*id.* at 8-9); that once Salyer arrived

---

[74] As a preliminary matter, the Court notes that Salyer's brief is unhelpful in resolving any of the issues posed by this case. The most obviously deficient aspect of Salyer's brief is that it fails to cite a single case to meaningfully substantiate his claim that Defendants violated Salyer's Fourth Amendment rights, despite the fact that Salyer must establish a Fourth Amendment violation to prevail on his § 1983 claims. Instead, he merely cites the Fourth Amendment reasonableness standard that applies to school searches (which, of course, this Court is well-aware of already) and then spends two pages regurgitating the facts and arguing—without *any* citation to case law—why the Individual Defendants' search was unreasonable. (*See* ECF No. 40 at 8.-10.) Salyer also argues that exigent circumstances did not exist for the search (*see id.* at 10-11), as he is apparently unaware of the well-established rule that the warrant requirement does not apply to school searches. *See T.L.O.,* 469 U.S. at 340 (holding that "school officials need not obtain a warrant before searching a student who is under their authority.") And, strangely, Salyer spends a page-and-a-half of his brief arguing that Defendants violated his Fourteenth Amendment rights under the state-created danger doctrine (*see* ECF No. 40 at 11-12), even though the Court previously dismissed his Fourteenth Amendment state-created danger claim at the motion to dismiss stage. (*See* ECF No. 22.) In sum, the Court is disappointed by the quality of Salyer's written submissions and urges his attorneys to spend more time researching the relevant legal issues—and to have a better understanding of the procedural posture of their own case—before submitting future briefs to the Court.

[75] Specifically, Salyer argues that "[t]here was no question that a report that the student may be carrying a weapon is serious and would have justified an immediate search of the student because of the potential danger. However, the Defendants perceived no danger and appeared to be following protocol without any concern for the rights of the Plaintiff or any imminent danger to themselves or the student population . . . It had been well over an hour from the time that Kyle Salyer was called to the office until the time that the Defendants decided to conduct the physical search of his person. There was no emergency that necessitated the search of his Kyle Salyer (sic) conducted by the Defendants . . . ." (ECF No. 40 at 9-10.)

-15-

in the administrative suite, the Individual Defendants allowed him to wait in the Attendance Secretary's Office, which had an unlocked door that opened to the cafeteria and was staffed only by an attendance coordinator (*id.* at 9); and that Harrington and Officer Bush did not restrain Salyer when they later accompanied him to his locker and classroom to collect his belongings. (*Id.*) In sum, Salyer argues that the search was unreasonable because the Individual Defendants did not actually believe that he presented a threat. (*See id.*)

The Court finds that no reasonable jury could conclude that the Individual Defendants' search of Salyer was unjustified at its inception. It is undisputed that on the morning of May 19, 2015, D.S. and his family informed Eckenrode and Harrington that Salyer planned to attack D.S. with a knife later that day. [76] It is also undisputed that D.S. substantiated these allegations by providing text messages between Salyer and B.L., D.S.'s ex-girlfriend, regarding Salyer's involvement in the planned attack. [77] Moreover, it is undisputed that Eckenrode and Harrington interviewed E.Z., who they found credible, and who stated that he had overheard Salyer and B.L. planning the knife attack.[78] Finally, it is undisputed that, prior to searching Salyer's person, Officer Bush searched Salyer's locker,[79] notebook, binder, and backpack, but did not find a knife in any of these locations.[80] Given that the Individual Defendants had received credible information that Salyer planned to attack a D.S. with a knife later that day, and given that they previously searched Salyer's

---

[76] ECF No. 38, at ¶ 4; ECF No. 41 at ¶ 4.

[77] ECF No. 38, at ¶ 5; ECF No. 41 at ¶ 5.

[78] ECF No. 38, at ¶¶ 17-18; ECF No. 41 at ¶¶ 17-18.

[79] ECF No. 38, at ¶ 24; ECF No. 41 at ¶ 24.

[80] ECF No. 38, at ¶ 26; ECF No. 41 at ¶ 26.

locker and personal belongings without locating a weapon, the Individual Defendants had "reasonable grounds" for suspecting that Salyer possessed the knife on his person, *see T.L.O.*, 469 U.S. at 341-42, and reasonably believed there was "a moderate chance of finding evidence of wrongdoing" on Salyer's person. *See Safford*, 557 U.S. at 371. Therefore, as a matter of law, the search was justified at its inception. *See T.L.O.*, 469 U.S. at 341-42; *Safford*, 557 U.S. at 371.

The Court rejects Salyer's contention that the search was unreasonable because the Individual Defendants may not have subjectively believed that Salyer posed a threat when they searched him. Salyer's argument relies on a false premise: that the Fourth Amendment imposes a *subjective* reasonableness standard on searches and seizures. However, the Supreme Court has repeatedly held that an *objective* reasonableness standard applies in the context of the Fourth Amendment. *See Brigham City, Utah v. Stuart*, 547 U.S. 398, 400 (2006) (applying an objective reasonableness standard to community caretaking searches by police officers); *Bond v. United States*, 529 U.S. 334, 340 (2000) (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979)) (explaining that the Fourth Amendment protects against government actions that intrude against expectations of privacy that are "objectively 'reasonable.'"); *Delaware v. Prouse*, 440 U.S. 648, 654 (1979) (explaining that, as a general proposition, the Fourth Amendment's "reasonableness standard" requires "that the facts upon which an intrusion is based be capable of measurement against 'an objective standard.'"). Salyer has cited no authority to support his argument that a subjective—as opposed to an objective—reasonableness standard applies to searches challenged under the Fourth Amendment, and the Court is not aware of any such authority. Accordingly, the Court applies the objective

reasonableness standard to the Individual Defendants' decision to search Salyer. As noted above, no reasonable jury could conclude that the Individual Defendants lacked an objectively reasonable justification for the search.

## D. No Reasonable Jury Could Find that the Search Was Unreasonable in Its Scope

Defendants contend that the scope of the search was reasonable as a matter of law because Officer Bush had reasonable suspicion to believe that Salyer possessed a knife when he began to pat him down. (ECF No. 37 at 10-11.) Defendants also argue that the attempted search was reasonable as a matter of law because it took place in the privacy of Eckenrode's office and because Salyer was a male high-school junior. (*Id.*) Defendants further contend that Salyer's sensitivity to touch does not render Officer Bush's pat-down of Salyer unreasonable because the Fourth Amendment does not require an accommodation based on an individual's idiosyncratic sensitivity or require that officers employ the least-intrusive means when conducting searches. (*Id.* at 12.)

In response, Salyer contends that Officer Bush acted unreasonably because he did not accommodate Salyer's sensitivity to touch.[81] (*See* ECF No. 40 at 10.) Salyer further argues

---

[81] The Court notes that Salyer does not argue that a pat-down search was *per se* unreasonable due to his sensitivity to touch. In fact, Salyer concedes that a pat-down search *would have been appropriate* had it been conducted earlier on in the investigation. In fact, Salyer maintains that "[a] pat down search should have been conducted at the first meeting with Plaintiff" if the Defendants truly believed that Salyer posed a threat. (ECF No. 40 at 9.) The Court struggles to reconcile Salyer's inherently contradictory arguments that, on the one hand, Officer Bush acted unreasonably by conducting a pat-down search given Salyer's sensitivity to touch and, on the other hand, that it would have been reasonable for Officer Bush to conduct a pat-down search of Salyer earlier on in the investigation.

that Officer Bush should have used an available metal-detecting wand to search Salyer instead of physically touching him. (*Id.*)

It is undisputed that, after telling Salyer that he needed to be searched, Officer Bush "tap[ped]" Salyer's back pocket to see if it contained the knife.[82] Officer Bush's search went no further, as Salyer "slap[ped]" Officer Bush's hand away,[83] gathered his things, and attempted to leave the office.[84] Accordingly, the Court must answer the question, could a reasonable jury conclude that patting-down Salyer's back pocket rendered the search unreasonable in scope and thus violated the Fourth Amendment?

The Court easily finds that no reasonable jury could conclude that the search was unreasonable in its scope. Several federal courts have held that "pat-downs" of students suspected of possessing weapons do not violate students' Fourth Amendment rights. *See, e.g., Thompson v. Carthage Sch. Dist.*, 87 F.3d 979, 983 (8th Cir. 1996) (holding that school district did not violate the Fourth Amendment when it conducted pat-down searches of students suspected of carrying dangerous weapons); *Shade v. City of Farmington, Minnesota*, 309 F.3d 1054, 1062 (8th Cir. 2002) (holding that school officials "may pat down and search a student's pockets when looking for a dangerous weapon"); *Brousseau By & Through Brousseau v. Town of Westerly By & Through Perri*, 11 F. Supp. 2d 177, 182 (D.R.I. 1998) (granting summary judgment in favor of school district on student's Fourth Amendment claim when school officials conducted pat-down searches of all students present in school cafeteria when knife went missing because "the scope of the search and the methods

---

82 ECF No. 38, at ¶ 33; ECF No. 41 at ¶ 33.
83 ECF No. 38, at ¶ 34; ECF No. 41 at ¶ 34.
84 ECF No. 38, at ¶ 36; ECF No. 41 at ¶ 36.

-19-

employed were restricted to what was reasonably necessary to achieve the purpose of the search."); *see also Herrera v. Santa Fe Pub. Sch.*, 792 F. Supp. 2d 1174, 1196 (D.N.M. 2011) (stating that "a pat-down search [of a student] on the basis of individualized reasonable suspicion would not be unreasonable.") Because the Individual Defendants had a reasonable, individualized suspicion that Salyer possessed a knife, the Court finds that, as a matter of law, Defendants did not act unreasonably by subjecting Salyer to a pat-down search.

The Court rejects Salyer's contention that the search was unreasonable because Officer Bush failed to use a handheld metal-detector instead of conducting a pat-down search. As the Third Circuit recently explained, "the Supreme Court 'has repeatedly stated that reasonableness under the Fourth Amendment does not require employing the least intrusive means . . . ." *Holland v. Rosen*, No. 17-3104, 2018 WL 3340930, at *19 (3d Cir. July 9, 2018) (quoting *Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cty. v. Earls*, 536 U.S. 822, 837 (2002)); *see City of Ontario, Cal. v. Quon*, 560 U.S. 746, 763 (2010) (quotation marks and citations omitted) (rejecting least-intrusive means test for reasonableness under the Fourth Amendment because "judges engaged in *post hoc* evaluations of government conduct can almost always imagine some alternative means by which the objectives of the government might have been accomplished"). Accordingly, the fact that Officer Bush failed to utilize an available metal detector does not automatically render the search unreasonable. Rather, as noted above, a search in the school context is "'permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the

infraction.'" *Safford*, 557 U.S. at 370 (quoting *T.L.O.*, 469 U.S. at 342). Based on the undisputed facts, no reasonable jury could conclude that patting down Salyer was not reasonably related to the objectives of the search—to determine whether he possessed a dangerous weapon. Nor could a reasonable jury determine that the search was excessively intrusive, given that Salyer was a male high school junior, the search was conducted by a male officer, the search only entailed touching Salyer's back pocket, and the search concerned a serious infraction—possession of a dangerous weapon that Salyer allegedly planned to use to attack a fellow student.

The Court further rejects Salyer's argument that his autism rendered the search unreasonable. Salyer failed to cite a single case to support his contention that an individual's mental illness alters the reasonableness inquiry into whether a search of that individual violates the Fourth Amendment, and the Court is not aware of any such authority. But the Court is aware that one Circuit Court of Appeals has stated that "[k]nowledge of a person's disability simply cannot foreclose officers from protecting themselves, the disabled person, and the general public when faced with threatening conduct by the disabled individual." *Bates ex rel. Johns v. Chesterfield Cty., Va.*, 216 F.3d 367, 372 (4th Cir. 2000) (affirming district court's grant of summary judgment in favor of defendants on excessive force claim when officers, after learning that plaintiff who had previously assaulted officer was autistic, forcibly restrained plaintiff when he "spun around" to face his stepfather). Given the circumstances Officer Bush faced, no reasonable jury could conclude that he acted unreasonably by subjecting Salyer to a pat-down search to ascertain whether he possessed a knife.

**E.** ⋅ **No Reasonable Jury Could Conclude that Officer Bush Used Excessive Force in Restraining Salyer**

Defendants argue that Officer Bush's use of force in tackling Salyer when he attempted to flee the office without being searched was reasonable as a matter of law. (ECF No. 37 at 15.) Salyer does not directly address the issue of excessive force in his response brief. (*See, generally,* ECF No. 40.) However, in the interest of thoroughness, the Court will address the excessive force issue here.

"A seizure occurs for Fourth Amendment purposes when 'a reasonable person would have believed that he was not free to leave.'" *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.,* 422 F.3d 141, 147 (3d Cir. 2005) (quoting *Michigan v. Chesternut,* 486 U.S. 567, 573 (1988)). Neither party contests the obvious fact that Officer Bush seized Salyer when he tackled him. The only open question is whether a reasonable jury could conclude that Officer Bush's tackling Salyer to prevent him from escaping the office without being searched for weapons violated the Fourth Amendment.

"[S]eizures in the public school context [are] governed by the reasonableness standard." *Shuman,* 422 F.3d at 148 (joining other courts of appeals in applying the reasonableness standard to seizures in the school context); *see also Estate of Massey v. City of Philadelphia,* 118 F. Supp. 3d 679, 688 (E.D. Pa. 2015) (citing *Shuman,* 422 F.3d at 147); *K.J. v. Greater Egg Harbor Reg'l High Sch. Dist. Bd. of Educ.,* No. CIV. 14-145 RBK/JS, 2015 WL 5039460, at *11 (D.N.J. Aug. 26, 2015) (citing *Shuman,* 422 F.3d at 148). Accordingly, the Court will analyze Salyer's excessive force claim under the Fourth Amendment's reasonableness standard. *See Zorbah v. Sch. Dist. of City of Philadelphia,* No. CIV.A. 12-3119,

2014 WL 535242, at *4 (E.D. Pa. Feb. 10, 2014) (applying reasonableness standard to excessive force claim against school police officer).

The Court finds that no reasonable jury could conclude that Officer Bush acted unreasonably by tackling Salyer when Salyer attempted to flee the administrative office without being subjected to a pat-down search. The parties do not dispute that, immediately before Salyer attempted to leave the office, Officer Bush "did not believe [Salyer] was showing [him] everything" and determined that he needed to search Salyer.[85] The parties also agree that Salyer "slap[ped]" Officer Bush's hand away when Officer Bush attempted to pat Salyer's back pocket[86] and proceeded to shout expletives at Officer Bush, Harrington, and Eckenrode.[87] Salyer then gathered his belongings and tried to "shove his way" past Officer Bush through a door that lead to the main hallway of the High School.[88] In these circumstances, no reasonable jury could conclude that Officer Bush acted unreasonably in tackling Salyer—who had a history of making threats, was presently acting violently, had allegedly planned a knife attack, and was reasonably believed to still be in possession of a knife—to prevent him from escaping into the school's main hallway. Therefore, Salyer's excessive force claim fails as a matter of law.

### F. Conclusion

The Court concludes that no reasonable jury could find that Salyer was subjected to an unreasonable search or seizure. Accordingly, as a matter of law, the Individual

---

[85] ECF No. 38, at ¶ 31; ECF No. 41 at ¶ 31.
[86] ECF No. 38, at ¶ 34; ECF No. 41 at ¶ 34.
[87] ECF No. 38, at ¶ 35; ECF No. 41 at ¶ 35.
[88] ECF No. 38, at ¶ 36; ECF No. 41 at ¶ 36.

-23-

Defendants did not violate the Fourth Amendment. *See T.L.O.*, 469 U.S. at 337 (holding that reasonableness standard governs school searches); *Shuman*, 422 F.3d at 148 (holding that reasonableness standard governs school seizures). Therefore, the Court will grant Defendants' Motion for Summary Judgment on Salyer's constitutional claims.[89]

## VI. Additionally, the Individual Defendants Are Entitled to Qualified Immunity on Salyer's § 1983 Claim

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).[90] Qualified immunity applies to public school officials. *See, e.g., Gruenke v. Seip*, 225 F.3d 290, 301 (3d Cir. 2000). The Individual Defendants bear the burden of establishing that they are entitled

---

[89] The Court's finding that Salyer failed to present facts sufficient to allow a reasonable jury to conclude that the Individual Defendants violated the Fourth Amendment also requires the Court to dismiss Salyer's *Monell* claim against the School District. "[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978); *Robinson v. Fair Acres Geriatric Ctr.*, 722 F. App'x 194, 197 (3d Cir. 2018) (quoting *Monell*, 436 U.S. at 691). For the School District to be liable, Salyer must provide evidence that the School District had a "policy or custom" and that the policy "caused" the constitutional violations that he alleges. See *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (citing *Bd. of Cty. Comm'rs of Bryan Cty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)). Because the Court holds that no Fourth Amendment violation occurred as a matter of law, it follows that the School District cannot be liable under *Monell*.

[90] As the Supreme Court has stated, "[q]ualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231 (2009). Accordingly, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal citation omitted).

-24-

to qualified immunity. *See Muth v. Woodring*, 666 F. App'x 137, 139 (3d Cir. 2016) (citing *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004)).

A public school official "is entitled to qualified immunity if he meets at least one of a two prong inquiry." *Patrick v. Moorman*, 536 F. App'x 255, 259 (3d Cir. 2013). "The first prong probes whether the allegations, '[t]aken in the light most favorable to the party asserting the injury, . . . show the [official's] conduct violated a [federal] right[.]" *Muth*, 666 F. App'x at 139 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "The second prong asks 'whether the law was clearly established at the time of the violation.'" *Muth*, 666 F. App'x at 139 (quoting *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d. Cir. 2010)).

As noted above, Salyer failed to present evidence sufficient to allow a reasonable jury to conclude that the Individual Defendants violated a federal right. Accordingly, the Individual Defendants are entitled to qualified immunity. *Muth*, 666 F. App'x at 139. Furthermore, even assuming *arguendo* that the Individual Defendants violated Salyer's Fourth Amendment right by failing to accommodate his touch sensitivity when searching him—an argument this Court rejects—this right was not clearly established at the time of the violation. *Id.* Therefore, for these two independently sufficient reasons, the Individual Defendants are entitled to qualified immunity on Salyer's constitutional claims.

## VII. The Court Will Grant Defendants' Motion for Summary Judgment on Salyer's Assault and Battery Claims Because No Reasonable Jury Could Conclude that Officer Bush Did Not Use Reasonable Force When He Seized Salyer

"Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done,

though in ever so small a degree, upon the person." *Renk v. City of Pittsburgh*, 641 A.2d 289,

293 (Pa. 1994) (quoting *Cohen v. Lit Brothers*, 166 Pa. Super. 206, 209 (1950)).

Under Pennsylvania law, "[i]n making a lawful arrest[,] the police may use 'such

force as is necessary under the circumstances to effectuate the arrest.'" *Boyden v. Twp. of

Upper Darby*, 5 F. Supp. 3d 731, 744 (E.D. Pa. 2014) (quoting *Renk*, 641 A.2d at 293). "The

reasonableness of the force determines whether the police officer's conduct constitutes an

assault and battery." *Garey v. Borough of Quakertown*, No. CIV.A. 12-799, 2012 WL 3562450,

at *5 (E.D. Pa. Aug. 20, 2012) (quoting *Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 870 (E.D.

Pa. 2000)). Accordingly, "[a] claim brought under Pennsylvania law for excessive force by

a police officer is a claim for assault and battery." *Boyden*, 5 F. Supp. 3d at 744 (internal

citation and quotation marks omitted).

The Court already found that Officer Bush's use of force in seizing Salyer was

reasonable as a matter of law. Therefore, the Court will grant Defendants' Motion for

Summary Judgment on Salyer's state tort claims for assault and battery.

## VIII. The Court Will Grant Defendants' Motion for Summary Judgment on Salyer's False Imprisonment Claim Because No Reasonable Jury Could Conclude that Defendants Acted Unlawfully in Detaining Salyer

Under Pennsylvania law, "[t]he elements of false imprisonment are (1) the detention

of another person, and (2) the unlawfulness of such detention." *Renk*, 641 A.2d at 293;

*Boardman v. Brown's Super Stores*, No. CVI.A. 13-1499, 2015 WL 437425, at *3 (E.D. Pa. Feb.

2, 2015) (quoting *Renk*, 641 A.2d at 293). The Third Circuit has held school officials may

lawfully require a student to remain in a small conference room for several hours while

school officials investigate allegations of serious student misconduct. *See Shuman*, 422 F.3d

at 149 (affirming district court's grant of summary judgment in favor of defendant school district and holding that, as a matter of law, it was not unreasonable for school to require student to remain in a small conference room for approximately three hours and forty-five minutes when student had been accused of sexual misconduct).

The Court finds that the Individual Defendants did not act unlawfully by requiring Salyer to remain in the Dean of Student's Office and the Attendance Secretary's Office while they investigated the alleged knife plot. It is undisputed that Salyer was called to the Dean of Student's Office around 8:00 a.m. [91] While the Court is unable to determine precisely when Salyer was released into his mother's custody, hospital records indicate that Salyer was "seen" in the emergency room at UPMC Altoona at 12:09 p.m.[92] Salyer testified that after leaving the high school and before going to the hospital, he and his mother "went home for a short time."[93] Thus, while the Court is unable to ascertain exactly how much time Salyer spent in the administrative offices during the investigation, the Court concludes that the Individual Defendants did not act unlawfully because Salyer was accused of serious misconduct[94] and, at most, Salyer spent less than four hours in the office. Therefore, the Court will grant Defendants' Motion for Summary Judgment on Salyer's false imprisonment claim.

---

[91] ECF No. 38, at ¶ 14; ECF No. 41 at ¶ 14.

[92] *See* ECF No. 38-7.

[93] Deposition of Kyle Salyer, ECF No. 38-3 at 76, ¶¶ 9-12.

[94] Specifically, possessing a dangerous weapon on High School property and plotting to violently attack a fellow student.

## IX. Conclusion

For the reasons stated above, the Court finds that there is no genuine dispute of material fact and Defendants are entitled to judgment as a matter of law on Salyer's constitutional and state law claims. Accordingly, the Court will grant Defendants' Motion for Summary Judgment.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KYLE ALLEN SALYER, | ) | CIVIL ACTION NO. 3:16-57 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| HOLLIDAYSBURG AREA SCHOOL | ) | |
| DISTRICT, WAYNE BUSH, MARK R. | ) | |
| HARRINGTON, DAWN ECKENRODE | ) | |
| and MAUREEN D. LETCHER, D. ED. | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

**AND NOW**, this 25th day of July, 2018, upon consideration of the Defendants'
Motion for Summary Judgment (ECF No. 36), and for the reasons set forth in the
accompanying memorandum, **IT IS HEREBY ORDERED** that Defendants' Motion is
**GRANTED**. Judgment is entered in favor of the Defendants against Plaintiff. The Clerk is
directed to close this case.

BY THE COURT

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE